[No. 48656–5.   En Banc.   April 28, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN ANTHONY VLADOVIC, *Petitioner.*

*John Anthony Vladovic,* pro se, and *Michael A. Frost,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *David W. Merrell, Deputy,* for respondent.

DIMMICK, J.—We here review an unpublished opinion of the Court of Appeals affirming the conviction of John Anthony Vladovic for attempted robbery in the first degree, robbery in the first degree, and four counts of kidnapping in the first degree. The court also struck the finding that Vladovic was armed with a firearm on both robbery counts. We affirm the Court of Appeals.

This case arises from an incident at Bagley Hall on the University of Washington campus. An armed man wearing a ski mask entered the chemistry department at Bagley Hall. He secured the area by gathering the five employees from various offices into one room, forcing them to lie on the floor, binding their hands and taping their eyes. The armed man then admitted one or more confederates. The robbers removed the employees' wallets from their pockets

but left the wallets at the scene. After the incident one employee, Mr. Jensen, discovered $12 was missing. When apprehended, petitioner had $30 on his person.

One robber took Mr. Jensen, the storeroom manager, into another room where the chemistry department's safe was kept. The safe contained $7,000 worth of platinum crucibles. The robber, unable to open the safe, began to unbind Mr. Jensen so that he could open the safe. The police then arrived. The robber who was wearing the green ski mask disappeared. Another robber, wearing a different colored ski mask, exchanged gunfire with the police and then surrendered. When apprehended he was still wearing the ski mask. This man was identified as Robert May, petitioner's codefendant at trial.

Petitioner was apprehended as he walked out of the storeroom on the same floor where the above events took place. He was not wearing a mask at the time, nor was he armed. A gun and green ski mask were later found in the same general area where petitioner had been found. Petitioner testified that he was in Bagley Hall to meet a student and was forced into the storeroom by one of the robbers. He also testified that during his captivity he saw several armed men escape through a tunnel system running under the university campus when the police arrived.

The arresting officer testified that upon his arrest petitioner made several inculpatory statements. Petitioner denied making those statements.

The jury found petitioner guilty of attempted robbery in the first degree for attempting to steal the contents of the safe, robbery in the first degree for stealing money from Mr. Jensen's wallet, and four counts of kidnapping in the first degree for restraining the chemistry department employees by using or threatening to use deadly force. Petitioner was not charged with kidnapping Mr. Jensen. The jury entered special verdicts finding that petitioner was armed with a deadly weapon which was a firearm during the commission of all the offenses. Petitioner was sentenced to 10 years' imprisonment for attempted robbery,

life imprisonment for robbery, and life imprisonment for three of the kidnapping counts, all to run concurrently. Petitioner was also sentenced to 20 years' imprisonment for the remaining count of kidnapping, to run consecutively with the other sentences.

Petitioner's counsel, deeming the appeal to be without merit, moved to withdraw before the Court of Appeals pursuant to *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396, *reh'g denied,* 388 U.S. 924 (1967) and *State v. Koehler,* 73 Wn.2d 145, 436 P.2d 773 (1968). The Court of Appeals granted that motion. Petitioner filed a pro se brief. The Court of Appeals affirmed the convictions and sentences but struck the sentence enhancement under the firearm statute, RCW 9.41.025, as to the counts of robbery and attempted robbery. We granted the petition for review and appointed an attorney to prepare a supplemental brief.

## I

The primary issues presented by this appeal are whether the doctrine of merger or the constitutional guaranty against double jeopardy prohibits multiple convictions for attempted robbery, robbery and kidnapping. We hold that the offenses do not merge nor does double jeopardy apply. Several other issues will also be discussed including petitioner's challenge to the sufficiency of the evidence and his challenge to the special verdicts finding he was armed with a firearm.

Petitioner was convicted of robbery in the first degree, attempted robbery in the first degree and kidnapping in the first degree pursuant to the following statutes:

A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW 9A.56.190.

(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

. . .

(b) Displays what appears to be a firearm or other deadly weapon . . .

RCW 9A.56.200.

(1) A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime.

RCW 9A.28.020.

(1) A person is guilty of kidnaping in the first degree if he intentionally abducts another person with intent:

. . .

(b) To facilitate commission of any felony or flight thereafter . . . [The underlying felony charged hereunder was the robbery of Mr. Jensen.]

RCW 9A.40.020.

The following definitions apply in this chapter:
(1) "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, . . .
(2) "Abduct" means to restrain a person by . . . (b) using or threatening to use deadly force . . .[1]

RCW 9A.40.010.

Petitioner urges that his kidnapping convictions must be vacated. He asserts that his kidnapping convictions "merge" into his convictions for robbery and attempted robbery.

■■ The leading case in this state on the merger doc-

---

[1]We note that the definition of "abduction" in the kidnapping statutes does not require movement or asportation of the victims. One commentator suggests this is a major defect in the statute and that the Washington Legislature should amend RCW 9A.40.010 to include a movement element. Survey of Washington Law, Criminal Law, *Merger of Crimes,* 17 Gonz. L. Rev. 547 (1982).

trine as applicable here[2] is *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979) (*Johnson* I). In that case, the defendant was convicted of two counts each of first degree rape, first degree kidnapping and first degree assault. The basis for these convictions was a single incident during which the defendant threatened and restrained two girls in order to rape them. The applicable first degree rape statute required the State to prove conduct constituting at least one additional crime other than rape in order to prove first degree rape. Kidnapping and assault were both listed as such additional crimes, although no particular degree was required. This court held that the assaults and kidnappings were merely incidental to and not separate and distinct from the rapes. Because proof of the assaults and kidnappings were necessary elements to prove first degree rape, they merged into the rape and were not separably punishable.

This analysis is in accord with *Whalen v. United States*, 445 U.S. 684, 63 L. Ed. 2d 715, 100 S. Ct. 1432 (1980). The defendant there was convicted both of rape and of murdering the same victim in the perpetration of the rape. The first degree murder statute at issue required proof that the murder was done in the course of six specified felonies, including rape. The Court held that since proof of rape was necessary to prove first degree murder under the statutory scheme, Congress had not authorized cumulative punishment for the rape and the killing committed in the course of the rape.

We recently explained our holding in *Johnson* I regarding merger as follows:

> *State v. Johnson, supra*, held that first degree rape, kidnapping and assault merged into one crime, that of first degree rape. The issue was the "pyramiding" of

---

[2]Although the term "merger" is used in several different contexts, we refer to it herein as a doctrine of statutory interpretation used to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions. *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932).

charges as a way of inflaming the jury when the legislature had clearly intended, in enacting statutes distinguishing different degrees of rape as class A, B, or C felonies, to punish defendant only once for the assault and/or kidnapping attending the first degree rape.

The legislature, we determined, intended not to allow the prosecutor to obtain convictions on the separate crimes, but rather to increase the punishment level for first degree rape by making other criminal conduct incident to that rape an aggravating factor leading to a class A felony. Since the same evidence (of the attendant assault and kidnapping) is required to convict of first degree rape, according to the intent of the legislature and our same evidence test, those crimes merged into the higher degree of the crime.

But *Johnson* is not determinative of the case before us, as proof of the separate act preceding the statutory rape was not necessary to proof of the statutory rape, and the legislature has not designated that the separate acts should merge.

*State v. Johnson,* 96 Wn.2d 926, 936, 639 P.2d 1332 (1982) (*Johnson* II).

The conclusion reached in *Johnson* II applies in this case. Proof of kidnapping is not necessary to prove the robbery or attempted robbery. Thus we cannot conclude that the Legislature intended that the offenses of robbery and attempted robbery merge into a kidnapping conviction.

Our only apparent divergence from the above analysis occurred in *State v. Allen,* 94 Wn.2d 860, 621 P.2d 143 (1980), which petitioner relies upon. In *Allen* we determined that, under the facts of that case, the kidnapping was separate and distinct from the robbery and thus the case fell within an exception to the merger doctrine set forth in *Johnson* I. There is dictum in *Allen* to the effect that had the kidnapping merely been incidental to the robbery, the former offense would have "merge[d] into the robbery as a matter of law." *Allen,* at 864. That statement is not in accord with either *Johnson* I or II and we do not now adhere to it. We reaffirm our holdings that the merger doctrine is a rule of statutory construction which only

applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.,* first degree rape) the State must prove not only that a defendant committed that crime (*e.g.,* rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.,* assault or kidnapping). Pursuant to this rule, kidnapping does not merge into first degree robbery.

Conversely, does robbery merge into kidnapping in the first degree under the above principles? The first degree kidnapping statute applicable in this case specifically requires proof of another felony in order to elevate the crime to first degree kidnapping. RCW 9A.40.020(1)(b). Accordingly, the merger doctrine could apply to preclude a conviction for such additional crime if the crime was merely incidental to the kidnapping. Petitioner specifically refuses to argue that the robbery merges into the kidnapping. In fact, when petitioner's counsel was asked at oral argument about this possibility, it was summarily rejected by him. However, for purposes of a complete analysis of the merger doctrine we examine that possibility.

██ An exception to the merger doctrine expressed in *Johnson* I and applied in *Allen* is that if the offenses committed in a particular case have independent purposes or effects, they may be punished separately. The robbery conviction in the case before us cannot stand unless it involved "some injury to the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element." *Johnson* I, at 680. Petitioner was charged with robbing Mr. Jensen. He was charged and convicted of kidnapping four people other than Mr. Jensen. The kidnapping charges involved forcing these four people to lie on the floor, binding their hands and taping their eyes. The robbery charge arose when money was taken from Mr. Jensen after the display of what appeared to be a deadly weapon. Because the injuries of the robbery and kidnappings involved different people, they clearly created separate and distinct inju-

ries. Accordingly, petitioner's robbery conviction does not merge into his kidnapping convictions.

## II

Petitioner next argues that even if the offenses do not merge, double jeopardy prohibits multiple punishments for robbery and kidnapping.

■ The United States Supreme Court recently held that the merger doctrine did not preclude multiple convictions for importing marijuana and for conspiring to distribute the same marijuana. *Albernaz v. United States,* 450 U.S. 333, 67 L. Ed. 2d 275, 101 S. Ct. 1137 (1981). The Court, at page 344, answered the defendants' double jeopardy arguments as follows:

Last Term in *Whalen* v. *United States,* [445 U.S. 684, 63 L. Ed. 2d 715, 100 S. Ct. 1432 (1980)] this Court stated that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." . . . In determining the permissibility of the imposition of cumulative punishment for the crime of . . . unintentional killing in the course of rape, the Court recognized that the "dispositive question" was whether Congress intended to authorize separate punishments for the two crimes. . . . This is so because the "power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress." *Ibid.* As we previously noted in *Brown* v. *Ohio,* [432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977)] "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." 432 U. S., at 165. Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.

(Footnote omitted.) We applied this reasoning in *Johnson II*, at page 937.

Additionally, the constitutional guaranty against double jeopardy protects a defendant from a second trial for the same offense and against multiple punishments for the same offense. *Whalen v. United States, supra.* This court has repeatedly rejected the notion that offenses committed during a "single transaction" are necessarily the "same offense". *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973). In order to be the "same offense" for purposes of double jeopardy the offenses must be the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses. *Roybal,* at 581.

A review of the robbery and kidnapping statutes involved in the instant case reveals that each offense includes an element not included in the other. The elements of robbery, as charged in this case, are: (1) a taking of personal property (2) from the person or in one's presence (3) by the use or threatened use of force, or violence, or fear of injury, (4) such force or fear being used to obtain or retain possession of the property, and (5) displaying what appears to be a deadly weapon. RCW 9A.56.190 and .200. Conversely, the elements of kidnapping, as charged herein, are: (1) intentionally abducting the victim (2) to facilitate the commission of a felony. RCW 9A.40.020(1)(b). "Abduct" means to restrain the victim's movements without his consent by use or threatened use of deadly force. RCW 9A.40.010(1) and (2). In order to prove robbery, the State must prove a taking of property, which is not an element of kidnapping. To prove kidnapping, the State must prove the use or threatened use of "deadly force". Robbery does not include an element of "deadly force" but only requires a taking by "force" and the display of what appears to be a deadly weapon. Since each offense includes an element not

included in the other and proof of one does not necessarily prove the other, the offenses are not the same under *Roybal.* Accordingly, double jeopardy does not prohibit petitioner's convictions for both offenses.

## III

■ Petitioner challenges the sufficiency of the evidence presented at trial. The test which we apply to such challenges is "whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of [the crime] *beyond a reasonable doubt." State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). Petitioner relies on *Green* in arguing that his kidnapping convictions cannot stand because the acts did not bear the indicia of a true kidnapping. We stated in *Green* that an ultimate killing of a victim does not itself constitute the restraint necessary to prove kidnapping. *Green* is inapposite in the instant case since, as discussed above, the restraint of the four employees was a separate act from the robbery of Mr. Jensen. Therefore, the robbery of Mr. Jensen could not supply the restraint element of the kidnappings. We have reviewed petitioner's remaining challenges to the sufficiency of the evidence and find them to be without merit.

## IV

Petitioner also challenges the jury's special finding that he was armed with a deadly weapon, which was a firearm, during the commission of the offenses. First, he assigns error to the trial court's failure to instruct the jury that it must be convinced beyond a reasonable doubt that he possessed such a weapon, as required by *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980).

There is no question that real firearms were in fact used in the instant case. The victims saw the man in the green mask with a .45 caliber pistol. The police exchanged gunfire with one of the robbers, petitioner's codefendant May. A .45 caliber pistol and green mask were found near petitioner at the time of his arrest. The other weapon, used by

May, was also found. Both guns were loaded with real bullets. Petitioner does not dispute these facts. He argues only that he was not the man in the green mask. The verdict reflects that the jurors believed petitioner was the man in the green mask and evidence exists to support this conclusion.

With these facts before us, we hold that the jury could have reached no other result than that the crimes were committed by means of a real firearm. There simply is no reasonable inference to the contrary. Accordingly, the trial court's failure to give the required instruction as to the standard of proof is harmless beyond a reasonable doubt and is not reversible error. *See State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981); *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981).

Petitioner's second challenge to the jury's special findings is based upon *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). In *Workman* we held that RCW 9.41.025, the firearm statute requiring enhancement of a sentence when a crime is committed with a firearm, may not be applied to first degree robbery convictions.[3] The Court of Appeals applied *Workman* and struck the firearm findings as to the robbery and attempted robbery convictions. The State did not appeal this ruling.

The Court of Appeals, however, did not discuss petitioner's contention that the principles outlined in *Workman* preclude the application of the enhancement provisions of RCW 9.41.025 to the convictions for first degree kidnapping. In analyzing the robbery statutes in *Workman,* we noted that the presence of a deadly weapon was one of the factors which differentiates first from second degree robbery. Thus, we concluded that the first degree robbery statute included a sentence enhancement provision intended to deal with crimes involving firearms and that

---

[3]RCW 9.41.025 has since been amended to allow application to convictions of first degree robbery. *See* Laws of 1981, ch. 258, § 1. The amendment was passed after petitioner's conviction, however.

the additional sentence enhancement provisions of the firearm statute were not applicable to the first degree robbery conviction. This reasoning does not apply where, as here, the crime of first degree kidnapping does not include the possession of a weapon as an element. *See* RCW 9A.40.020. We therefore hold that the penalty enhancement provisions of RCW 9.41.025 apply to the first degree kidnapping convictions. This holding is in accord with *State v. Adlington–Kelly*, 95 Wn.2d 917, 631 P.2d 954 (1981), wherein we held that the provisions of RCW 9.41.025 were applicable to the crime of first degree assault since possession of a firearm was not a necessary element of assault.

We find the remaining assignments of error to be without merit; therefore, since we hold neither the doctrine of merger nor double jeopardy applies, petitioner's convictions are hereby affirmed. The findings that petitioner was armed with a firearm are stricken as to the convictions of robbery and attempted robbery. The findings that the petitioner was armed with a deadly weapon, which was a firearm, during the four kidnappings are affirmed.

STAFFORD, BRACHTENBACH, and DOLLIVER, JJ., and CUNNINGHAM, J. Pro Tem., concur.

UTTER, J. (concurring in part, dissenting in part)—I dissent from the majority's affirmance of the defendant's kidnapping convictions. The defendant will spend a substantial part of the remainder of his life in institutions and under supervision for the robbery and attempted robbery convictions upon which we all agree. The majority's conclusion is not necessary to protect society from the defendant.

The majority's analysis has the effect of adopting a construction of our kidnapping statute which we have carefully avoided in the past and which produces the absurd result of making every armed robber automatically guilty of first degree kidnapping. Our own cases, those of a majority of other jurisdictions, and ordinary principles of statutory construction demand a far more constrained reading. I

would therefore retain the rule recognized by most other jurisdictions, and previously recognized by this court, that a restraint which is merely incidental to some other crime cannot serve as the basis for conviction of kidnapping. To hold otherwise will lead to gross inequities which the legislative history shows were not intended.

## I

Initially it must be recognized that there are several forms of merger. One is the rule that, absent an express indication of contrary legislative intent, an offense which is an element of and merely incidental to another offense merges and is not separably punishable (hereinafter "general merger"). *See, e.g., State v. Johnson,* 92 Wn.2d 671, 680, 600 P.2d 1249 (1979) (assault and kidnapping merged into first degree rape) (hereinafter *Johnson* I); *State v. Springfield,* 28 Wn. App. 446, 452, 624 P.2d 208 (1981) (second degree assault merged into first degree robbery); *cf. State v. Workman,* 90 Wn.2d 443, 454, 584 P.2d 382 (1978) (firearm enhancement statute not applicable to conviction of first degree robbery committed while armed with a deadly weapon). This rule is predicated on a presumption that when the Legislature has incorporated one offense into another to create or enhance the degree of the latter, it does not intend to allow separate punishment for the incorporated offense. *Johnson* I, at 676. The rule also draws support from the rule of lenity, which requires us, where possible, to construe criminal statutes so as to minimize the penalty imposed. *See State v. Sass,* 94 Wn.2d 721, 726, 620 P.2d 79 (1980); *State v. Workman, supra* at 454.

The majority recognizes this first form of merger but correctly concludes that it does not apply to the facts of this case. The "abduct[ions]" which serve as a basis for the four kidnapping convictions, *i.e.,* forcing four employees by means of deadly force to lie upon the floor and then binding them, were not necessary to prove either the first degree robbery or first degree attempted robbery of the manager, Mr. Jensen. Proof of the latter two offenses, as charged in

the information in the present case, required proof only that the defendant displayed to Mr. Jensen what appeared to be a firearm or other deadly weapon.

The majority almost entirely ignores a second well established form of merger, however, which is peculiar to the law of kidnapping. That is the rule that forced movement of a person cannot support a conviction for kidnapping if it is merely incidental to some other offense (hereinafter "kidnapping merger"). *See People v. Daniels,* 71 Cal. 2d 1119, 1139, 459 P.2d 225, 80 Cal. Rptr. 897, 43 A.L.R.3d 677 (1969); *People v. Adams,* 34 Mich. App. 546, 567, 192 N.W.2d 19 (1971), *aff'd,* 389 Mich. 222, 205 N.W.2d 415 (1973) (hereinafter *Adams* I); *People v. Levy,* 15 N.Y.2d 159, 164–65, 204 N.E.2d 842, 256 N.Y.S.2d 793 (1965). The rule applies equally to an incidental detention. *See Adams* I, at 557; *State v. Logan,* 60 Ohio St. 2d 126, 134–35, 397 N.E.2d 1345 (1979). Though the rule has been rejected by some jurisdictions (*see, e.g., Long v. State,* 332 A.2d 146, 147 (Del. 1975)), it represents both the majority rule and the modern trend. *Government of V.I. v. Berry,* 604 F.2d 221, 225 (3d Cir. 1979) and cases cited therein; Survey of Washington Law, *Criminal Law: Merger of Crimes,* 17 Gonz. L. Rev. 547, 550 (1982). In a number of jurisdictions, the kidnapping merger rule has been adopted only after long years of painful experience with a contrary rule (*see, e.g., Daniels,* at 1125–32, 1139–40) and a virtual volley of caustic commentary. *See, e.g.,* Enright, *California's Aggravated Kidnapping Statute—A Need for Revision,* 4 San Diego L. Rev. 285 (1967); Note, *Kidnapping and the Element of Asportation,* 35 S. Cal. L. Rev. 212 (1962); Packer, *The Case for Revision of the Penal Code,* 13 Stan. L. Rev. 252, 259 (1961); 110 U. Pa. L. Rev. 293 (1961); Note, *A Rationale for the Law of Kidnapping,* 53 Colum. L. Rev. 540, 556–58 (1953); Comment, *Robbery Becomes Kidnaping,* 3 Stan. L. Rev. 156 (1950).

Kidnapping merger differs fundamentally from general merger in that it is part of the definition of the crime, *i.e.,* no kidnapping exists absent a detention or movement

beyond that merely incidental to another crime. In contrast, general merger limits only the crimes for which conviction may lie. Both crimes have been committed, but the State may convict the defendant of only one. Since both have been committed, however, the State may choose which to charge.

Like general merger, on the other hand, kidnapping merger is based on standard principles of statutory construction. One of those principles is that a statute should be construed so as not to produce an absurd result. *See, e.g., Blondheim v. State,* 84 Wn.2d 874, 879, 529 P.2d 1096 (1975). To refuse to read the kidnapping merger rule into a kidnapping statute produces precisely such a result. *Daniels,* at 1130; *Adams* I, at 557; Packer, *The Case for Revision of the Penal Code,* 13 Stan. L. Rev. 252, 259 (1961). Several offenses, including robbery, can scarcely be committed without at least some incidental restraint or movement. *Daniels,* at 1134; *Adams* I, at 560; *People v. Levy, supra* at 164. To not merge such incidental conduct into the underlying offense makes every person who commits robbery with a deadly weapon also guilty of first degree kidnapping. The armed robber who orders his victim to momentarily remain motionless while his wallet is removed becomes guilty of, *in addition* to first degree robbery, the same offense as the infamous kidnapper of the son of Charles Lindbergh 50 years ago.[4]

Since kidnapping is recognized as one of the most serious of crimes and is punished as such, the additional punishment which may be imposed, absent merger, is far from inconsequential. *Levy,* at 163–64; Comment, *Room–to–*

---

[4]Perhaps the ultimate actual example is the California case of *People v. Wein,* 50 Cal. 2d 383, 326 P.2d 457 (1958), overruled by *People v. Daniels, supra* at 1140. In that case, the California Supreme Court upheld, among others, a kidnapping conviction based solely on the "movement" of a rape victim from a standing position next to the bed onto the bed itself. *Wein,* at 412 (Carter, J., dissenting). Professor Packer justifiably termed this the "*reductio ad absurdum* case". *See* Packer, *The Case for Revision of the Penal Code,* 13 Stan. L. Rev. 252, 259 n.41 (1961).

*Room Movement: A Risk Rationale for Aggravated Kidnaping,* 11 Stan. L. Rev. 554, 554–55 (1959); *See* RCW 9A.40.020 (first degree kidnapping a class A felony). Yet there need be absolutely no additional conduct beyond the armed robbery for which punishment is already to be imposed. Historically, such "pyramiding" of a kidnapping charge upon that for the underlying offense was a common abuse and has been roundly condemned by the commentators. *See, e.g.,* Model Penal Code § 212.1, comment 2, at 220–22 (1980); Note, *A Rationale of the Law of Kidnapping,* 53 Colum. L. Rev. 540, 556–58 (1953). Indeed, one court has suggested that any kidnapping statute broad enough to allow this practice would be unconstitutionally vague because of the broad discretion given to judges and juries. *See Adams* I, at 559–60.

While the Legislature is certainly entitled to enhance punishment for robbery committed with a deadly weapon, it has already done so by classifying it as robbery in the first degree. *Cf. State v. Workman, supra* at 453 (firearm enhancement statute not intended to apply to robbery convictions because use of deadly weapons already taken into consideration by statutory classification of robbery). We recognized in *Johnson* I that the Legislature's enactment of RCW Title 9A, with its more clearly defined classification of crimes by degree, was intended to eliminate the need to enhance punishment by "pyramiding" charges. *Johnson* I, at 675–76. It is our duty to give effect to this intent.

Generally, a statute should be construed in light of the purposes for which it was enacted. *State v. Coyle,* 95 Wn.2d 1, 5, 621 P.2d 1256 (1980). With respect to kidnapping, this principle of construction is especially pertinent because of the potential overlap between kidnapping and other statutes.

> A salient consideration is that virtually all conduct within the scope of kidnapping law is punishable under some other criminal provision: e.g., extortion, homicide, assault, rape, robbery, statutory rape, contributing to the delinquency of a minor, sex perversion and compulsory

prostitution. Consequently, the practical effect of kidnapping law is to permit the imposition of additional sanctions when one of these other crimes is accompanied by a detention and asportation. Kidnapping law, therefore, is defensible only if an asportation or detention significantly increases the dangerousness or undesirability of the defendant's behavior.

Note, *A Rationale of the Law of Kidnapping,* 53 Colum. L. Rev. 540, 556 (1953). Separate punishment for kidnapping is necessary only to punish conduct not already included within other offenses, especially now that the Legislature has independently provided for enhancement by creating clearly defined degrees of most major offenses.

What little legislative history is available also suggests approval of the kidnapping merger rule. Our kidnapping statute was patterned on the New York statute and our definition of "abduct" is worded almost identically. *See* Washington State Crim. Just. Training Comm'n, *Revised Criminal Code Training and Seminar Manual,* at 9A.40-.010–1 (compiled and edited by G. Golob & G. Mooney 1976) (hereinafter *Training Manual*); *compare* New York Penal Law § 135.00 (McKinney 1975) *with* RCW 9A.40-.010(2). The official comment attached to the New York statute described the kidnapping statute as intended to encompass only those restraints "savoring strongly of the substantial removal, isolation and/or violence usually associated with genuine kidnapping." Comment, New York Penal Law § 135.00 (McKinney 1975). Those involved in drafting our statute were cognizant of and approved this comment. *See Training Manual,* at 9A.40.010–2. As the New York Court of Appeals later recognized (*see People v. Cassidy,* 40 N.Y.2d 763, 766, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976)), this comment evidences a legislative acceptance of the kidnapping merger rule.

Kidnapping merger is also mandated by the rule of lenity. As noted above, that rule requires that, in the absence of contrary legislative intent, we construe criminal statutes so as to minimize punishment. *State v. Sass, supra* at 726;

*State v. Workman, supra* at 454. Failure to read the kidnapping merger rule into our statute permits the imposition of multiple punishment for what is essentially a single act. This is in stark conflict with the rule of lenity.

Incidental restraint and movement during the commission of some other crime do not bear the true indicia of kidnapping. The experience of other jurisdictions, basic principles of statutory construction, and common sense all compel recognition of the kidnapping merger rule.

## II

Our prior cases have not, as the majority apparently contends, adopted solely the general merger rule and rejected the kidnapping merger rule. In fact, we have expressly enunciated both rules and have rejected neither.

The first case in which we applied rules of merger was *Johnson* I. In that case, the defendant was convicted of first degree rape, assault, and kidnapping, despite the fact that the assault and kidnapping were incidental to the rape. *Johnson* I, at 672, 681. We reversed the convictions for assault and kidnapping on the ground that they were merged into the first degree rape.

Because first degree rape, as charged in *Johnson* I, included kidnapping or the use of deadly force (which would constitute assault) as an element (*Johnson* I, at 674, 681), the general merger rule applied. Indeed, that rule was necessary to merge the assault. At the same time, however, we recognized the historical abuse of kidnapping statutes and cited with approval *Daniels, Adams* I, and *Levy,* all of which applied the kidnapping merger rule. *Johnson* I, at 676. Thus, we gave at least tacit recognition to both merger rules in *Johnson* I.

In two later cases, we expressly recognized the kidnapping merger rule. The first of those was *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). In that case, the defendant had been charged with aggravated first degree murder committed in the furtherance of either rape or kidnapping. *Green,* at 219. We noted that this required separate proof

of either the crime of rape or the crime of kidnapping. *Green,* at 219–20. We then concluded that there was insufficient evidence to support a finding of kidnapping. *Green,* at 228.

Our conclusion in *Green* was not, however, based solely on the lack of any restraint but was also based on the fact that what restraint and movement had taken place was incidental to the murder.

> Moreover, although appellant lifted and moved the victim to the apartment's exterior loading area, it is clear these events were actually an integral part of and not independent of the underlying homicide. While movement of the victim occurred, the mere *incidental* restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping. *See State v. Johnson,* 92 Wn.2d 671, 676, 600 P.2d 1249 (1979).

*Green,* at 226–27. We then cited *People v. Adams,* 389 Mich. 222, 236, 205 N.W.2d 415 (1973) (hereinafter *Adams* II) and *Levy* for the view that "a technical 'kidnapping' [merges] when that 'kidnapping' is merely incidental to the commission of another crime." *Green,* at 227. This explicit statement and application of the kidnapping merger rule is completely ignored by the majority.

We also expressly recognized the kidnapping merger rule in *State v. Allen,* 94 Wn.2d 860, 621 P.2d 143 (1980). That case involved precisely the same issue presented by the present case—whether a kidnapping merged into a robbery. *Allen,* at 862. Citing *Johnson* I and *Green,* we stated that "[a]ny incidental abduction or restraint . . . during [the robbery] would merge into the robbery as a matter of law." *Allen,* at 864. The majority may be correct in pointing out that this is technically dictum because we then concluded that the abduction in that case was not incidental. *See* majority, at 420. It is dictum of the strongest sort, however, for without it we would never even have had to reach the question of whether the abduction was incidental. Moreover, contrary to the majority's contention, the *Allen* dictum is entirely consistent with *Johnson* I, as well as *Green*

and the kidnapping merger cases in other jurisdictions.

Neither is the *Allen* dictum, or the kidnapping merger rule in general, inconsistent with *State v. Johnson,* 96 Wn.2d 926, 639 P.2d 1332 (1982) (hereinafter *Johnson* II). Since that case involved only convictions for first degree statutory rape and indecent liberties (*Johnson* II, at 927), the kidnapping merger rule was inapposite. Though some courts have vaguely suggested otherwise by their analysis (*see, e.g., State v. Penn,* 32 Wn. App. 911, 915, 650 P.2d 1111 (1982)), the kidnapping merger rule is limited to kidnapping. The unique nature of kidnapping's near automatic inclusion within several other offenses and the historical abuse of kidnapping statutes merit a rule peculiar to kidnapping that does not extend to other offenses.[5] For this reason, it was unnecessary to even discuss the kidnapping merger rule and hence we properly avoided any discussion of it or *Allen* and *Green.*

It was necessary, however, to discuss *Johnson* I, for that case applied not only the kidnapping merger rule but also the general merger rule. We thus made clear that the *general* merger rule required not only that the merging crime be incidental to another but also that it be a necessary element. *See Johnson* II, at 936. This is the source of the language quoted by the majority, at pages 419–20. It is an analysis only of the general merger rule. It has no relevance to the kidnapping merger rule—otherwise, we would have been required to overrule *Green* and our dictum in *Allen.* Yet we did not do so.

All of our cases can thus be reconciled. They recognize two types of merger. One, which I have termed general merger, applies to all offenses. The test for general merger is two-pronged—an offense merges into another offense if it is both incidental to and an element of the latter offense.

---

[5]Some courts have extended the rule to the crime of unlawful imprisonment since that offense is basically a lesser form of kidnapping. *See, e.g., Government of V.I. v. Berry,* 604 F.2d 221, 227 n.13 (3d Cir. 1979). Others, however, have been unwilling to go even this far. *See, e.g., People v. Smith,* 91 Ill. App. 3d 523, 529, 414 N.E.2d 1117 (1980).

In the case of kidnapping, however, the second prong of this test is eliminated—any incidental kidnapping merges. This special rule of kidnapping merger is justified by the broad scope of kidnapping statutes and their historical abuse.

### III

Recognition of the kidnapping merger rule does not immediately dispose of the present case. The State argues that even if we apply the kidnapping merger rule the kidnapping here was not incidental to the robbery and thus does not merge.

Initially, it should be noted that the mere fact that the persons who were restrained were not victims of the robbery or attempted robbery does not preclude the possibility of merger. There exist numerous examples of cases applying the kidnapping merger rule to detention or movement of several employees during robbery of a business. *See, e.g., People v. Adams,* 4 Cal. 3d 429, 482 P.2d 657, 93 Cal. Rptr. 745 (1971); *People v. Smith,* 4 Cal. 3d 426, 482 P.2d 655, 93 Cal. Rptr. 743 (1971); *Friend v. State,* 385 So. 2d 696, 697 (Fla. Dist. Ct. App. 1980). Similarly, the rule has been applied where the *companion* of a robbery victim has been restrained. *See, e.g., Seay v. Commonwealth,* 609 S.W.2d 128, 130 (Ky. 1980) (mother and two sons tied up, but one of sons not robbed; held no kidnapping). The situation in the instant case is analogous to both of these fact situations. Four employees were tied up while Mr. Vladovic attempted to rob the department in which they were working and while he did rob another employee, Mr. Jensen.

Nonetheless, the restraint here may have gone beyond the incidental. The robbers did not merely hold the employees in one place while executing the robbery but made them lie on the floor, tied them up, and taped their eyes shut. This conduct may well have gone beyond the "merely incidental" to possess "a separate and distinct existence" from the robbery. *See Allen,* at 864 n.1.

Whether a restraint is or is not incidental must be deter-

mined "in light of the totality of surrounding circumstances." *Green,* at 227. The key question is whether the restraint is such as "'significantly increases the dangerousness or undesirability of the defendant's behavior.'" *Government of V.I. v. Berry,* 604 F.2d 221, 227 (3d Cir. 1979). In *Berry,* the court set forth four factors to be considered in making this determination: (1) the duration of the restraint; (2) whether the restraint occurred during the commission of the separate offense; (3) whether the restraint is inherent in the separate offense; and (4) whether the restraint creates a significant danger independent of that posed by the separate offense. *Berry,* at 227. *Accord, People v. Smith,* 91 Ill. App. 3d 523, 529, 414 N.E.2d 1117 (1980). I would adopt the test and factors enunciated in *Berry.*

Though in some cases the question of whether this test is met may be clear as a matter of law (*see, e.g., Allen,* at 865), it is ordinarily a question of fact for the jury (*Allen,* at 865; *Adams* II, at 241–42). Applying the *Berry* factors to the present case, I find it to be in the gray area. While the restraint was of relatively short duration and lasted only during the robbery, it went somewhat further than necessary to the robbery and significantly increased the employees' discomfort if not their danger. Other courts faced with similar fact situations have divided on the question of whether the restraint was incidental. *Compare Friend v. State, supra* at 697 (four employees forced into bathroom and told to stay; held incidental) *and Seay v. Commonwealth, supra* at 130–31 (mother and two sons tied up; held incidental) *with State v. Williams,* 226 Kan. 688, 694–95, 602 P.2d 1332 (1979) (defendant bound and gagged victims, placed chairs over them, and placed desk across door of room they were in; held not incidental) *and State v. Fulcher,* 294 N.C. 503, 524, 243 S.E.2d 338 (1978) (rape victims tied up prior to rape; held not incidental).

Since the present case is in the gray area, I would remand for a new trial on the kidnapping charges. In the

circumstances of this case,[6] Mr. Vladovic would be collaterally estopped from contesting facts necessarily put in issue and decided adversely to him by his convictions of robbery and attempted robbery. *See, e.g., United States v. Colacurcio,* 514 F.2d 1, 6 (9th Cir. 1975). At the new trial Mr. Vladovic would, however, be entitled to an instruction directing the jury that a restraint by deadly force is insufficient to support a conviction of kidnapping if it is incidental to another crime. The term incidental should be defined in terms of the test and factors enunciated in *Berry.*

## IV

The question of whether the robbery in the present case could merge into one or more of the kidnappings is not properly before us here and I will not address it. The majority's analysis of the issue is nothing but dictum and will not be binding upon us in later cases. I will therefore only note that I would look to *Berry* for guidance on the question of whether the restraint is incidental. I also have serious doubts as to whether the fact that the crimes involved different victims is dispositive, as the majority apparently concludes it is.

I dissent.

WILLIAMS, C.J., and DORE and PEARSON, JJ., concur with UTTER, J.

Reconsideration denied June 27, 1983.

---

[6]While most courts have recognized that collateral estoppel can be applied against a defendant in a criminal prosecution (*but see State v. Ingenito,* 87 N.J. 204, 217, 432 A.2d 912 (1981)), limitations to such application have been suggested. *See, e.g., People v. Plevy,* 52 N.Y.2d 58, 65–66, 417 N.E.2d 518, 436 N.Y.S.2d 224 (1980) (collateral estoppel cannot be applied on issues raised by defendant's testimony in second trial where defendant exercised his right not to testify in first trial); Comment, *The Use of Collateral Estoppel Against the Accused,* 69 Colum. L. Rev. 515, 523–24 (1969) (collateral estoppel against defendant should be permitted only when the State can show cause for separate trials and first trial was not for lesser offense). None of the suggested limitations are pertinent here.