[No. 6365-4-II.   Division Two.   August 14, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT ARNETT, *Appellant.*

528

*Walter J. Sowa, Public Defender,* for appellant.

*David Bruneau, Prosecuting Attorney,* and *Michael D. Chinn, Deputy,* for respondent.

PETRIE, J.—Robert Arnett appeals a judgment and sentence (execution of a 20–year sentence was suspended pending confinement and evaluation of his status as a sexual psychopath at Western State Hospital) following his convictions of the crimes of kidnapping in the first degree, RCW 9A.40.020(1)(b), and indecent liberties, RCW 9A.44-.100(1)(b). On appeal, Arnett contends the trial court erred by failing to vacate the indecent liberties conviction on either of the alternative theories of (1) merger, (2) abuse of prosecutorial discretion, or (3) denial of due process of law. Arnett also contends the trial court erred by denying his

motion to suppress evidence seized following an illegal search of his home. We find no error and affirm the judgment and sentence.

At approximately 7:30 p.m. on October 31, 1981 a 10-year-old girl, the victim in this case, left her home to "trick-or-treat" at neighboring houses. She had instructions to return at 8 p.m. She failed to return, and her parents, joined by several neighbors, searched for her unsuccessfully in the neighborhood. Deputy sheriffs joined in the search at approximately 11 p.m. The child was found by officers in the bathroom of defendant's apartment shortly after 5:30 a.m. the following morning.

The child told the jury that when she knocked on defendant's door he gave her apples and she talked to him briefly in the kitchen. Defendant told her to go to his bedroom. Once there, "he told me to take off my clothes, but I didn't really want to, . . ." He "started pushing me" and "he says are you going to take off your clothes or do I have to kill you." After he threatened her with a hammer, she submitted to repeated acts of fellatio and what appears to be at least sexual contact with her rectum. At one point "he locked the door and I was trying to get out . . ." When she asked if she could go home, he replied "In a little while." The jury obviously believed the child and returned verdicts of guilty to each count.

█ Both in his posttrial motion and on appeal defendant insists that the indecent liberties conviction—not the kidnapping conviction—should be vacated. Presumably, this is because of his belief that the less severely punishable crime (indecent liberties is a class B felony) merged into the more severely punishable crime (kidnapping first degree is a class A felony). If this be the basis for his argument, defendant confuses the "merger" doctrine here at issue with another concept of merger, *i.e.*, that a lesser included offense merges into the greater offense. That type of merger problem occurs when the prosecution joins charges of several degrees of the same crime or joins charges of attempts to commit a given crime as well as the completed crime.

The "merger" doctrine he seeks to invoke does not involve "included" offenses in the usual sense of that term. *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979), *cert. dismissed,* 446 U.S. 948 (1980). Rather, it is a doctrine of judicial origin designed to prevent an unnatural elevation of the "true" crime to be charged. *See People v. Cassidy,* 40 N.Y.2d 763, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976). Under that doctrine, a debatable issue may exist as to whether or not the *kidnapping* conviction should have been vacated. *State v. Vladovic,* 99 Wn.2d 413, 662 P.2d 853 (1983). In any event, because of the posture of this appeal, that question is not before us, and we do not attempt to resolve it.

The "true" crime in the case at bench, and under the information as charged, is the crime of indecent liberties. The conviction for that crime can only be vacated if the crime of indecent liberties is somehow, in the usual sense of that term, a lesser included offense of the crime of kidnapping as charged in the information. We hold that it is not such a lesser included offense.

Arnett was charged with first degree kidnapping under RCW 9A.40.020(1)(b) in that on October 31, he,

> with intent to facilitate commission of the felony of Indecent Liberties, did intentionally abduct a minor child; . . .

He was charged in the other count with the crime of indecent liberties in that on the same date, he

> did knowingly cause a minor child, not the spouse of the defendant, and less than 14 years of age, to have sexual contact with the defendant . . .

The gravamen of the first charge is the abduction; that of the second charge is the sexual contact. Not all the essential elements of the crime of indecent liberties are included within the kidnapping count. Accordingly, the former was not a lesser included offense of the latter. *State v. Frazier,* 99 Wn.2d 180, 661 P.2d 126 (1983); *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978).

Next, Arnett contends that the conviction of indecent

liberties should be vacated because he was denied due process of law when the prosecuting attorney arbitrarily chose to charge him with the crime of indecent liberties instead of the crime of first degree rape, which the evidence proved he committed. He reasons that, had the prosecutor charged him with first degree rape and also first degree kidnapping with intent to facilitate the crime of first degree rape, the crime of first degree kidnapping would have been dismissed. He cites *State v. Ingham,* 26 Wn. App. 45, 612 P.2d 801 (1980), and contends that under those charges he would have been subject to penalty only for having committed the one crime: rape. Again, had he been seeking to vacate the crime of kidnapping, he may have been correct. *But see State v. Vladovic, supra.* His contention, however, is a non sequitur.

The fact is that he committed both the crime of rape and indecent liberties. The prosecutor simply chose to charge the more readily provable offense of indecent liberties and the more readily provable offense of first degree kidnapping by abduction with intent to facilitate the felony of indecent liberties. He was convicted of both. Because Arnett does not seek vacation of the kidnapping conviction, we find neither prosecutorial abuse of discretion nor denial of due process of law.

Finally, Arnett contends that Sgt. Bill Henry of the Clallam County Sheriff's Department unconstitutionally invaded the privacy of his home and illegally searched his home when the child was found therein and he was arrested. He contends, therefore, that all evidence subsequently obtained by the sheriff's office was tainted by that illegal entry and search and should have been suppressed. We disagree.

Arnett's contention here is destroyed by the suppression hearing court's extensive findings of fact both as to disputed facts and undisputed facts. Though defendant assigns error to the court's resolution of disputed facts, our independent evaluation of the evidence, as required by

*State v. Daugherty*, 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981), indicates that those findings are amply supported by the record.

The undisputed facts are that Sgt. Henry began his investigation of the victim's disappearance at approximately 4 a.m. November 1, and that he was thoroughly briefed on the extensive search efforts by other deputies and neighbors which had been conducted in the child's neighborhood since her disappearance the previous evening. That investigation, which included three previous visits to defendant's home and unsatisfactory discussions with him throughout the evening and early morning hours, created a strong, articulable suspicion that the child had been at defendant's home (a fact which he repeatedly denied throughout the several visits) and might still have been there. At approximately 5:36 a.m. Sgt. Henry and Deputy Sheriff Howard Cunningham proceeded to defendant's residence. After their entry and discussions with defendant as shown hereafter, Sgt. Henry located the child victim in defendant's bathroom.

Because the trial court's findings as to disputed facts are so crucial to the issue, we repeat them verbatim in the margin.[1]

---

[1] "1. Based on the testimony of Sgt. Henry and Deputy Cunningham, the court finds that the officers' entry into the home was consentual [*sic*]. After Sgt. Henry had knocked on the door and had responded to the defendant's inquiry by identifying their presence as "Sheriff's Office" the defendant then opened the door and Sgt. Henry asked if he could come in to speak with him. The defendant stood aside and opened the door wide for the officers to enter. Mr. Arnett then turned and walked to the couch located in the living room and sat down.

"2. In regards to the officers' requests for permission to search the Arnett residence, and Mr. Arnett's replies to them, the court finds that:

"After informing the defendant as to why they had come to his residence, inquiring as to whether the defendant was alone in the house, and having shown the defendant a photograph of the victim, Sgt. Henry asked the defendant if he could take a brief look through the residence on the possibility that the victim might have entered the residence when he was outside. Defendant said she could not have entered as he had locked the door when he went outside and he did not want the officers to look through the house as he was tired. Sgt. Henry advised the defendant that it would only take perhaps three minutes to which the suspect said he would rather the officers come back and do it later as he was tired. After

■ Under these facts, the entry into defendant's apartment was clearly consensual. The real issue is whether, after entry and defendant's protestations as to further search, Sgt. Henry violated Arnett's constitutional rights, under the fact pattern found by the court, by proceeding toward the bathroom. We have recently addressed a somewhat similar set of facts and found valid a walk–through search based on exigent circumstances in *State v. Welker*, 37 Wn. App. 628, 683 P.2d 1110 (1984). In the case at bench, the situation was even more emergent than in *Welker* because of the potential life–threatening danger to the child victim.

We adopt the reasoning in *Welker* and hold, not only that Sgt. Henry legally found the child, but also that under the fact pattern his actions comported with the highest and most exemplary standards of effective police activity designed to protect the populace from unlawful danger.

advising the defendant of his constitutional rights under Miranda, Sgt. Henry advised the defendant that he was not placing him under arrest but that he could not understand why he did not want to assist the officers by eliminating his place as a possible location for the missing girl.

"3. The court finds that the sequence of events as to the advisement of rights and the showing of the photograph are as follows:

"After advising the defendant as to why the officers had come to his residence, inquiring as to whether he was alone or not, Sgt. Henry then proceeded to show the suspect a photograph of the victim. The defendant was asked if he had seen the girl in the photograph before. Mr. Arnett indicated he had not. Sgt. Henry then asked for permission to look through the house to which the defendant denied such permission. (Exact conversation set forth above.) Sgt. Henry then advised the defendant of his Miranda rights. Mr. Arnett asked the sergeant if he was arresting him to which the sergeant replied he had not placed him under arrest but that he could not understand why he did not want to assist the officers by eliminating his place as a possible location for the missing girl.

"4. The court finds, based on the testimony of Sgt. Henry, that a short time after the sergeant had advised the defendant of his constitutional rights under Miranda, Sgt. Henry heard a "scraping noise" coming from inside the residence in the vicinity of the bedroom/bathroom area.

"5. Based on the testimony of Sgt. Henry and Deputy Cunningham, the court finds that Sgt. Henry did not indicate to the defendant that he was going to search his house absent a search warrant. The court finds that upon hearing the scraping noise, Sgt. Henry indicated that there appeared to be exigent circumstances and then began his walk–through search."

Judgment affirmed.

WORSWICK, A.C.J., and REED, J., concur.