# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51505-9-II |
| Respondent, | |
| v. | |
| MARIO MARSHAWN STEELE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, P.J. — Mario Steele appeals his convictions for manslaughter in the first degree and robbery in the first degree. He argues that the convictions violate double jeopardy, requiring dismissal of the lesser offense (robbery in the first degree). In the alternative, he argues his convictions merged, requiring a remand for resentencing. In his statement of additional grounds for review (SAG), Steele alleges that sufficient evidence does not support his convictions and prosecutorial misconduct. We affirm his convictions and sentence.

## FACTS

On the evening of January 16, 2011, Lenard Masten was shot and killed at his apartment complex in Lakewood. Earlier that day, Masten sold cocaine to Steele and another man who Steele knew as "Dre." Clerk's Papers (CP) at 47. Being dissatisfied with the quality of the cocaine, Steele and Dre decided they would rob Masten to get their money back. Steele set up a meeting to confront Masten. Steele's phone records show a brief call between Steele's phone and Masten's phone minutes before the murder. During a confrontation, Masten was shot. Witnesses saw one of the men rummaging through Masten's clothing and taking Masten's phone, keys, and other items.

The State originally charged Steele with murder in the first degree. Steele entered an *Alford*[1] plea to manslaughter in the first degree while armed with a firearm and robbery in the first degree. The State charged Steele with manslaughter based on Steele's "participa[tion] in the assault of Lenard Masten" thereby recklessly causing Masten's death and that in the commission of the crime, Steele, or an accomplice, was "armed with a firearm." CP at 2. The State charged Steele with robbery based on Steele's "tak[ing of] personal property belonging to another with intent to steal from the person . . . by use or threatened use of immediate force, violence, or fear of injury . . . and in the commission therefore, or in immediate flight therefrom, [Steele] was armed with a deadly weapon." CP at 3.

Steele agreed that, based on the evidence, there was a substantial likelihood that a trier of fact could find him guilty of the charges. Steele agreed that the court could establish a factual basis for the plea by reviewing the statement of probable cause. It provided:

> On January 16, 2011 at 20:32 hours, Lakewood Police were dispatched to 5510 Chicago Ave SW regarding a shooting. Lenard Masten, the victim, lived in an apartment at this address. En route dispatched advised the officers that the suspects were two black males in their 20s and one was armed with a gun. When the officers arrived, Lakewood Fire Department personnel was treating the [sic] Mr. Masten. Mr. Masten had a gunshot wound to his stomach. Mr. Masten was transported to St. Joseph Hospital, where he died in surgery.
>
> Investigating detectives learned Mr. Masten had been dealing drugs. The detectives also learned STEELE had made several phone calls, both from his cell phone and landline, to Mr. Masten on the day of the murder. STELLE [sic] was interviewed by detectives and admitted to being involved in a drug deal with Mr. Masten at about 3:30 pm the day of the murder. STEELE told detectives he and a man known only as "Dre" purchased drugs from Mr. Masten. The defendant said that Dre was upset after the transaction because the drugs were bunk (fake).
>
> Dre asked STEELE to set-up a meeting so he could confront Mr. Masten. STEELE told the detectives that Dre said "I'll get his ass." STEELE believed Dre would either rob or assault Mr. Masten. STEELE admitted he set-up this meeting and phone records confirm there was a brief call between STEELE'S phone and Mr. Masten's phone minutes before the murder.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

2

Witnesses at the murder scene described the victim being confronted by two black males: a taller darker skinned man and a lighter skinned, shorter man with a goatee. One witness said she saw the man with the goatee carrying a handgun in the moments after the shooting. Witnesses indicated that the shooting party rummaged through Mr. Masten's clothing and apparently took his cell phone, keys and perhaps other tiems [sic]. The shooter was observed running toward Masten's apartment door. Assailants eventually ran to a nearby dark colored SUV and drove away.

CP 47-48.

On August 31, 2012, the trial court accepted Steele's plea and followed the agreed sentencing recommendation, which was 185 months (125 months plus 60 months on the firearm enhancement) on the manslaughter conviction and 54 months on the robbery conviction to run concurrently. On February 20, 2018, Steele appealed.[2]

ANALYSIS

Steele contends his convictions for manslaughter in the first degree and robbery in the first degree violate double jeopardy, requiring dismissal of the lesser offense (robbery in the first degree). In the alternative, he argues his convictions merge, requiring a remand for resentencing. We disagree with both assertions.

I.     DOUBLE JEOPARDY

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution provide protections against double jeopardy. *State v. Brown*, 159 Wn. App. 1, 9, 248 P.3d 518 (2010). These double jeopardy clauses prohibit the State from punishing an offender multiple times for the same offense. *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006). We review double jeopardy claims de novo. *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010).

_____

[2] A commissioner of this court granted Steele's motion to file a late notice of appeal.

Initially, the State argues that by pleading guilty in 2012, Steele waived his right to collaterally attack his convictions based on double jeopardy grounds. "A guilty plea generally insulates the defendant's conviction from collateral attack." *State v. Knight*, 162 Wn.2d 806, 811, 174 P.3d 1167 (2008). However, there are exceptions to the general rule, and particularly where "on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989). Therefore, our review in this case is limited to whether a double jeopardy violation is apparent from our record. *In re Pers. Restraint of Schorr*, 191 Wn.2d 315, 324, 422 P.3d 451 (2018). This means that we look solely to the probable cause statement, which Steele agreed provided the factual basis for his pleas.

To determine if a defendant has been punished multiple times for the same offense, we traditionally apply the "same evidence" test. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). "The same evidence test mirrors the federal 'same elements' standard adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998). Under the same evidence test, double jeopardy is violated when a defendant is convicted of offenses which are the same in law and in fact. *Calle*, 125 Wn.2d at 777-78. If each offense, as charged, includes elements not included in the other, or requires proof of a fact that the other does not, the offenses are different and multiple convictions can stand. *Calle*, 125 Wn.2d at 777-78. The inquiry requires a case-by-case determination. *State v. Freeman*, 153 Wn.2d 765, 780, 108 P.3d 753 (2005).

As charged in this case, manslaughter in the first degree occurs when a person "recklessly" causes the death of another person. RCW 9A.32.060(1)(a). Robbery in the first degree occurs when a person takes personal property belonging to another with intent to steal from the person by

4

use or threatened use of immediate force, violence, or fear of injury and in the commission therefore, or in immediate flight therefrom, he or she was "armed with a deadly weapon." RCW 9A.56.200(1)(a)(i).

Proving robbery in the first degree, as charged here, does not establish manslaughter in the first degree because robbery in the first degree by means of being armed with a deadly weapon does not require actual injury to the victim. Indeed, a robbery can occur even though the taking is not completed until after the victim's death. *State v. Craig*, 82 Wn.2d 777, 783, 514 P.2d 151 (1973). Conversely, proving manslaughter does not prove the robbery because manslaughter contains no theft element. *See State v. Cole*, 117 Wn. App. 870, 875, 73 P .3d 411 (2003) (attempted robbery by use of a knife and second degree assault not the same offense in law). Thus, the two offenses are not the same in law.

The offenses are also not the same in fact. The evidence of the shooting or an assault as being part of the "reckless" act that caused the death of Masten does not conflict with robbery in the first degree based on being armed with a firearm. Separate facts support each conviction. Therefore, Steele's convictions for manslaughter in the first degree and robbery in the first degree do not violate double jeopardy.

II. MERGER

Turning to Steele's merger argument, like double jeopardy, we review alleged merger violations de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

"The merger doctrine, independent of double jeopardy concerns, evaluates whether the legislature intended multiple crimes to merge into a single crime for punishment purposes." *State v. Novikoff*, 1 Wn. App. 2d 166, 172-73, 404 P.3d 513 (2017). "The merger doctrine applies only

5

when, in order to prove a more serious crime, the State must prove an act that a statute defines as a separate crime." *Novikoff*, 1 Wn. App. 2d at 173.

The merger doctrine applies when the legislature clearly indicates that it did not intend to impose multiple punishments for a single act that violates several statutory provisions. *State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983). "[W]hen the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." *Freeman*, 153 Wn.2d at 772-73 (legislature intended to punish assault in the first degree and robbery in the first degree separately). If each crime has "an independent purpose or effect" they may be punished separately. *Freeman*, 153 Wn.2d at 773. We determine whether convictions merge on a case-by-case basis. *State v. Saunders*, 120 Wn. App. 800, 821, 86 P.3d 232 (2004).

Here, Steele pleaded guilty to manslaughter in the first degree and robbery in the first degree. As discussed above, Steele recklessly caused the death of Masten by setting up a meeting between Steele, Masten, and Dre. Masten admitted that he believed Dre was going to "rob or assault" Masten. CP at 48. Masten was then shot. After the manslaughter, witnesses saw one of the men take personal property from Masten.

Because the degree of one offense is not raised by conduct separately criminalized by the legislature and each crime has an independent purpose or effect, the two convictions do not merge for sentencing purposes.

III.    SAG ISSUES

In his SAG, Steele first expresses his remorse for his actions and then appears to argue that sufficient evidence does not support his convictions and prosecutorial misconduct. A defendant waives a sufficiency of the evidence arguments when he or she pleads guilty. *In re Pers. Restraint*

*of Bybee*, 142 Wn. App. 260, 268, 175 P.3d 589 (2007). Moreover, Steele does not provide meaningful argument to explain his prosecutorial misconduct argument to warrant review. *See* RAP 10.10(c) (appellate court not obligated to search record in support of claims made in SAG); *see also State v. Meneses*, 149 Wn. App. 707, 716, 205 P.3d 916 (2009) (although a defendant is not required to cite to the record or authority in his SAG, "he must still 'inform the court of the nature and occurrence of [the] alleged errors.'"). Accordingly, we decline to reach Steele's SAG issues.

CONCLUSION

Because Steele's convictions for manslaughter in the first degree and robbery in the first degree do not violate double jeopardy or merge and because he raises no meritorious issues in his SAG, we affirm Steele's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, P.J.

We concur:

_____
Sutton, J.

_____
Glasgow, J.