# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67413-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCELIS CHRISTOPHER KING, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 4, 2013 |
| | ) | |

VERELLEN, J. — Marcelis King appeals his convictions for two counts of second degree assault and two counts of felony harassment. King contends the assault and harassment convictions violate double jeopardy. He challenges the sufficiency of the evidence of one of the assault and one of the harassment convictions. King further contends the Information and the to-convict instruction did not include the definition of "true threat" as an element of felony harassment. Finally, King argues that prosecutorial misconduct deprived him of a fair trial. We disagree and affirm King's convictions for assault and felony harassment.

King also appeals the firearm enhancements imposed for each of his convictions. He challenges the lack of a unanimity instruction for the firearm enhancement special verdict forms. Because the general instructions on unanimity did not adequately inform the jury of the proper deliberative process for imposing the enhancements, we vacate the firearm enhancements and remand for further proceedings consistent with this opinion.

## BACKGROUND

In the early morning of May 22, 2010, Michael Rosier and Ronny Johnson went out dancing in Renton, Washington. They ran into an acquaintance, Makel Andrews, who invited them back to her apartment. Soon after they arrived at Andrews' apartment, Christopher King and Kurtis Walker entered the apartment.[1] Rosier did not know either of them. Walker snorted cocaine, and appeared upset that Rosier was in the apartment. King began pacing back and forth behind Walker. King said he was going to "pop" someone and told Walker he would "pop him [Rosier] right now."[2]

As Andrews attempted to remove Walker from the room, Rosier and Johnson left the apartment quickly. Rosier remotely unlocked his car. He did not realize Walker and King had followed them down to the car.

As Rosier got in the driver's seat and Johnson in the passenger seat, Walker jumped in the rear passenger door behind Johnson. Walker said to Rosier and Johnson, "Where [do] you think you're all going?"[3] King pulled a sports utility vehicle behind Rosier's car, preventing Rosier and Johnson from leaving. King walked to the driver's side window, pulled out a pistol, and motioned for Rosier to roll down the window.

Andrews intervened, and as she led Walker away, Walker instructed King to keep Rosier and Johnson where they were. Rosier testified that King then threatened to kill him and Johnson. Rosier was afraid that King would shoot him or Johnson if they tried to drive away. Johnson, in tears, asked King why he wanted to kill them. King continued to point the gun at Rosier and Johnson. Rosier specifically testified that at times, King pointed the

---

[1] Kurtis Walker was King's codefendant.

[2] Report of Proceedings (RP) (Jan. 13, 2011) at 24.

[3] Id. at 28.

2

gun directly at the side of Rosier's head and directly at Johnson. Rosier and Johnson both believed they were going to die.

Johnson managed to dial 911 with her cell phone hidden in the space between the driver's seat and the passenger seat. She could not speak to the emergency operator, however, for fear that King would hear her and retaliate. Using Johnson's 911 call, police determined her location.

When the officers arrived, King was still standing at the driver's side window. King dropped the gun onto Rosier's lap, told Rosier not to say anything about the gun, and ran. The gun fell between Rosier's feet. Police arrested King near the scene.

The State charged King with second degree assault and felony harassment as to both Rosier (count 1and count 3) and Johnson (count 2 and count 4). The State also charged King with first degree unlawful possession of a firearm.[4] The jury convicted King of all five counts.

The State also sought firearm enhancements on counts 1 through 4. The court read jury instruction 49,[5] the special verdict instruction, to the jury:

> For purposes of a special verdict, the State must prove, beyond a reasonable doubt, that the defendant was armed with a firearm at the time of the commission of the crime in counts 1, 2, 3, and 4.

> A person is armed with a firearm if at the time of the commission of the crime the firearm is easily accessible and readily available for offensive or defensive use.

> The State must prove, beyond a reasonable doubt, that there was a connection between the firearm and the defendant, or an accomplice.

---

[4] King has not appealed the conviction for unlawful possession of a firearm.

[5] It appears from the record that jury instruction 49 was not included in the packet of written instructions filed with the court clerk.

3

> The State must also prove, beyond a reasonable doubt, that there was a connection between the firearm and the crime.
>
> If one participant in a crime is armed with a firearm, all accomplices to that participant are deemed to be so armed, even if only one firearm is involved.
>
> A firearm is a weapon or device from which a projectile may be fired from an explosive such as gunpowder.[6]

Jury instruction 49 did not instruct the jury it had to be unanimous to impose the firearm enhancement.[7]

The jury signed special verdict forms finding that King was armed with a firearm at the time of the commission of both assault and both felony harassment charges, resulting in firearm enhancements for counts 1 through 4.

## DISCUSSION

### Double Jeopardy

King first contends that second degree assault with a deadly weapon and felony harassment—as charged here, where King was not accused of assault for striking or hitting anyone—are the same offense for double jeopardy purposes. The State relies on this court's decision in State v. Mandanas,[8] in which we held that convictions for felony harassment and second degree assault with a deadly weapon do not violate double

---

[6] RP (Jan. 24, 2011) at 42. The State proposed WPIC 160.00, the "nonunanimity rule" for special verdict forms, but that instruction was not included in either the verbal or written instructions. See Clerk's Papers at 449 (citing 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal 160.00* (3d ed. 2008)).

[7] The codefendant's proposed jury instructions did not include a special verdict instruction at all. King did not propose jury instructions. Nor did the special verdict forms themselves include any direction on unanimity. See Clerk's Papers at 69-71, 81.

[8] 163 Wn. App. 712, 717-20, 262 P.3d 522 (2011).

jeopardy because the two offenses have different elements and are therefore not the same in law.

Whether King's convictions violate double jeopardy is a question of law we review de novo.[9] The double jeopardy clause of the Fifth Amendment of the United States Constitution and article I, section 9 of the Washington State Constitution protect a defendant against multiple punishments for the same offense.[10] However, the Washington Supreme Court has consistently rejected the notion that "offenses committed during a 'single transaction' are necessarily the 'same offense'" for purposes of double jeopardy.[11] The State may therefore charge a defendant with multiple crimes arising from the same criminal conduct.[12]

"Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense."[13] The dispositive question in analyzing whether two convictions violate double jeopardy is whether the legislature authorized multiple punishments.[14] In determining whether the legislature intended to punish two separate offenses, courts first look to the language of the statutes.[15]

---

[9] State v. Jackman, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).

[10] State v. Calle, 125 Wn.2d 769, 772, 888 P.2d 155 (1995).

[11] State v. Vladovic, 99 Wn.2d 413, 423, 662 P.2d 853 (1983).

[12] State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

[13] In re Pers. Restraint of Orange, 152 Wn.2d 795, 815, 100 P.3d 291 (2004).

[14] Calle, 125 Wn.2d at 776.

[15] Id.

If the language of the statutes does not expressly authorize cumulative punishment, courts apply the Blockburger or "same evidence" test to determine legislative intent.[16] The Blockburger test examines the evidence required to prove each offense:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.[17]

If one offense includes an element not included in the other, we presume the crimes are not the same for double jeopardy purposes.[18]

Although there may be a substantial overlap in the evidence that establishes the two crimes, "'[i]f each requires proof of a fact that the other does not, the Blockburger test is satisfied'" and there is no double jeopardy violation.[19] The test requires courts to consider the offenses as charged.[20]

The State charged King with second degree assault under RCW 9A.36.021(1)(c), alleging he "assault[ed] another with a deadly weapon." The State's burden was to prove

---

[16] State v. Clark, 170 Wn. App. 166, 188, 283 P.3d 1116 (2012) (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

[17] Blockburger, 284 U.S. at 304; see also Calle, 125 Wn.2d at 777 ("'If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.'") (quoting Vladovic, 99 Wn.2d at 423); Mandanas, 163 Wn. App. at 717-18.

[18] Mandanas, 163 Wn. App. at 718.

[19] Albernaz v. United States, 450 U.S. 333, 338, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981) (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975)); Vladovic, 99 Wn.2d at 423.

[20] Freeman, 153 Wn.2d at 772.

King used an instrument capable of causing serious injury under the circumstances to intentionally act in a way to cause Rosier and Johnson to fear imminent bodily injury.[21]

The State also charged King with felony harassment for threatening to kill Rosier and Johnson. The State's burden was to prove King "knowingly threaten[ed]" to "cause bodily injury immediately or in the future" to Rosier and Johnson,[22] and specifically that King "harass[ed]" Rosier and Johnson "by threatening to kill" them.[23]

In Mandanas, we held that the plain language of the two statutes indicates the legislature "intended to distinguish felony harassment and second degree assault [with a deadly weapon] as distinct offenses."[24] The harassment statute "specifically criminalizes threats to injure or kill another, which, standing alone, are insufficient to establish an assault."[25] Because the two crimes have distinct elements, they "do not constitute the same offense for purposes of double jeopardy."[26]

Notwithstanding the holding in Mandanas, King contends his convictions violate double jeopardy under the analysis set forth in In re Personal Restraint of Orange.[27] As we explained in Mandanas, "Orange did not modify the test used by Washington courts to determine whether the defendant was placed in double jeopardy."[28] Orange stands for the proposition that where the same exact action proves both crimes, without one crime

---

[21] Mandanas, 163 Wn. App. at 719.

[22] RCW 9A.46.020(1).

[23] RCW 9A.46.020(2).

[24] Mandanas, 163 Wn. App. at 719-20.

[25] Id. at 720.

[26] Id.

[27] 152 Wn.2d 795, 816, 100 P.3d 291 (2004).

[28] Mandanas, 163 Wn. App. at 720 n.3.

requiring proof of a fact that the other does not, a double jeopardy violation is present.[29]

Here, King's verbal threat to kill Rosier and Johnson is the act supporting the felony harassment charge. King's pointing of the gun through the car window at Rosier and Johnson is a distinct act supporting the second degree assault with a deadly weapon charge.[30] King's convictions for second degree assault with a deadly weapon and felony harassment do not violate double jeopardy.

*Sufficiency of the Evidence*

King contends the State presented insufficient evidence to support his convictions for felony harassment and second degree assault against Johnson. In analyzing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found elements of the crime beyond a reasonable doubt.[31]

The charge of felony harassment required the State to present evidence that King knowingly threatened to kill Johnson.[32] Rosier testified that King threatened to kill Johnson as he stood by the driver's side window.[33] Johnson, in tears, asked King why he

---

[29] Id.

[30] See id. at 720-21 (concluding Orange did not control the outcome because the convictions for assault and harassment in Mandanas were based on separate and distinct acts). King's reliance on State v. Leming, 133 Wn. App. 875, 887-89, 138 P.3d 1095 (2006), is similarly misplaced. In Leming, the State had charged the defendant with second degree assault with intent to commit a felony under RCW 9A.36.021(e), and the felony underlying the second degree assault charge was felony harassment. Id. at 882-83, 888-89. The State relied on the same evidence to prove both crimes. Id. at 889. Because the same act formed the predicate for both convictions, the court concluded the two convictions subjected him to multiple punishments for the same offense. Id.

[31] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[32] RCW 9A.46.020(1), (2)(b)(ii).

[33] King did not testify in his own defense.

8

wanted to kill them, when they had done nothing to King. After Johnson dialed her 911 call, an officer overheard on the phone a male voice saying, "I'll kill you, motherfucker."[34] Sufficient evidence supports King's conviction for felony harassment of Johnson.

The charge of second degree assault with a deadly weapon required the State to present evidence that King intentionally acted in a way to cause Johnson to fear imminent bodily injury, and that King did so using a deadly weapon.[35] Johnson testified she saw King brandishing a gun through the driver's side window. Rosier testified that although King occasionally lowered the gun to his own waist, King repeatedly raised the gun to point it directly at both Rosier and Johnson. Johnson testified she was afraid she was going to die. Accepting the truth of the State's evidence and drawing all inferences in the State's favor, there is sufficient evidence that King used a gun to place Johnson in imminent fear of bodily injury.

*Definition of "True Threat" in Felony Harassment*

King next argues the definition of "true threat" is an element of felony harassment, so that the omission of the definition from the Information and the to-convict instruction constituted error.

The harassment statute criminalizes a knowing threat to "cause bodily injury immediately or in the future."[36] If the threat is one of death, the crime transforms from a gross misdemeanor to a felony.[37] A defendant need not actually intend to carry out the

---

[34] RP (Jan. 11, 2011) at 140.

[35] RCW 9A.36.021(1)(c); Mandanas, 163 Wn. App. at 719.

[36] RCW 9A.46.020(1)(a)(i).

[37] RCW 9A.46.020(2)(b)(ii).

threat; "[i]t is enough that a reasonable speaker would foresee that the threat would be considered serious."[38]

To avoid infringement of protected speech, the felony harassment statute prohibits only true threats.[39] A "true threat" is "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'"[40] Because true threats are not protected speech under the First Amendment, we interpret statutes criminalizing threatening language as proscribing only true threats.[41]

The Washington Supreme Court recently confirmed that to ensure protected speech is not criminalized, trial courts should instruct the jury on the State's burden to establish that a reasonable person in the defendant's position would foresee that his statements or acts would be interpreted as a serious expression of intention to carry out the threat.[42] While the court must instruct the jury on the meaning of "true threat," the true threat concept is definitional; it limits the scope of the essential threat element, but is not itself an essential element of the crime.[43] Because the true threat standard is not an essential element of felony harassment, it need not be included in the Information or the to-convict

---

[38] State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

[39] State v. Kilburn, 151 Wn.2d 36, 41, 84 P.3d 1215 (2004).

[40] Schaler, 169 Wn.2d at 283 (quoting Kilburn, 151 Wn.2d at 43).

[41] State v. Allen, 161 Wn. App. 727, 749, 255 P.3d 784 (2011), review granted, 172 Wn.2d 1014, 262 P.3d 63 (2011).

[42] State v. Allen, No. 86119-6, slip. op. at 21 (Wash. Jan. 24, 2013); Schaler, 169 Wn.2d at 292.

[43] Allen, No. 86119-6, slip. op. at 22-24; see also State v. Atkins, 156 Wn. App. 799, 805, 236 P.3d 897 (2010); State v. Tellez, 141 Wn. App. 479, 483-84, 170 P.3d 75 (2007).

instruction.[44] So long as the court instructs the jury on the definition of "true threat," the defendant's First Amendment rights are protected.[45]

Consistent with these standards, the trial court here provided the following definitional instruction:

> Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person;
>
> To be a threat, a statement of act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.[46]

Because the trial court correctly instructed the jury on the meaning of "true threat," we reject King's challenge to the Information and the to-convict instruction.

*Prosecutorial Misconduct*

King contends a variety of comments by the prosecutor constituted misconduct. To prevail on a claim of prosecutorial misconduct, King must show the conduct was both improper and prejudicial in the context of the entire record and circumstances at trial.[47] We will find prejudice only if there is a substantial likelihood that the misconduct affected the jury's verdict.[48] Absent a proper objection and request for a curative instruction, King

---

[44] Allen, No. 86119-6, slip. op. at 23.

[45] Id.

[46] Clerk's Papers at 116.

[47] State v. Stenson, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997).

[48] Id. at 718-19.

must demonstrate the prosecutor's comments were so flagrant or ill-intentioned that an instruction could not have cured the prejudice.[49]

### A. Comment on Constitutional Right/Witness Demeanor

During closing, the prosecutor discussed the demeanor of the State's witnesses:

> Their demeanor. You're able to observe the[ ] demeanor of Ms. Johnson and Mr. Rosier here in court while they were testifying. That was appropriate under the circumstances. I think Mr. Rosier got a little bit annoyed during the cross-examination [by] the questions that were being asked of him, and that was certainly appropriate under the circumstances. Ms. Johnson was clearly very nervous.[50]

The prosecutor further stated Rosier and Johnson had no motive to provide false testimony, stating,

> Mr. Rosier and Ms. Johnson don't have anything to gain by accusing Mr. King and [the codefendant] of assaulting them with a firearm, or threatening to kill them. They have got a lot to lose by being a part of this process. Lose their privacy.[51]

King did not object to either comment.[52] King contends these comments disparaged him for exercising his rights under the confrontation clause.

But taken in context, the prosecutor was discussing how witness demeanor can reflect positively or negatively on credibility rather than drawing adverse inferences about King's constitutional right to cross-examine the witnesses against him.[53]

---

[49] State v. Anderson, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009).

[50] RP (Jan. 24, 2011) at 96.

[51] Id. at 99.

[52] The verbatim report of proceedings reflects that an unidentified speaker interjected something after each comment; however, each interjection was inaudible. King makes no suggestion that his counsel objected to the prosecutor's comments.

[53] See, e.g., State v. Fiallo-Lopez, 78 Wn. App. 717, 728-30, 899 P.2d 1294 (1995) (prosecutor committed misconduct by drawing adverse inferences about defendant's Fifth Amendment rights by stating defendant did not rebut the State's evidence).

B. Improper Vouching

King also asserts the prosecutor twice improperly vouched for the State's witnesses during closing. It is improper for the prosecution to vouch for the credibility of a government witness by either placing the prestige of the government behind the witness, or indicating that information not presented to the jury supports the witness's testimony.[54] But a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to freely comment on witness credibility based on the evidence.[55] Prejudicial error will not be found unless it is "'clear and unmistakable'" that counsel is expressing a personal opinion.[56]

The prosecutor commented that Rosier's and Johnson's memory was "not perfect," but "it was appropriate under the circumstances."[57] King did not object. This comment does not constitute vouching at all. The discussion of the witnesses' memory neither placed the prestige of the government behind the witnesses nor indicated that information not presented to the jury supported their testimony. Rather, the prosecutor noted that, given the "traumatic experience," the witnesses' memories were not perfect.[58] The argument did not constitute vouching.[59]

---

[54] Allen, 161 Wn. App. at 746.

[55] State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006).

[56] State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (quoting State v. Sargent, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)); see also State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010) (it is misconduct for a prosecutor to vouch for a witness by expressing a personal belief as to the witness's truthfulness).

[57] RP (Jan. 24, 2011) at 95.

[58] Id.

[59] In Fiallo-Lopez, the prosecutor made a similar comment about the differing testimony of the State's witnesses, stating, "If they [the police] made this up, don't you think that they would have gotten together from the start with Mr. Lima and Mr. Cooper and they

The prosecutor also stated, "And finally criminal liability. They [Rosier and Johnson] expose themselves to criminal liability for making something like this up."[60] King did not object here, either. This comment, while unnecessary, does not constitute an expression of the prosecutor's personal opinion of Rosier's and Johnson's credibility.

The cases relied upon by King involve more emphatic expressions of the prosecutor's personal opinion on credibility. For example, in State v. Ramos,[61] we held the prosecutor improperly vouched for the credibility of police witnesses when the prosecutor said, "[T]he truth of the matter is [the police witnesses] were just telling you what they saw and they are not being anything less than 100% candid."[62] It is not clear and unmistakable that the prosecutor's passing comment about the risk of criminal liability was a personal opinion of credibility.

---

would have made sure that every single statement, every single description by every single witness was the same? The fact is, they didn't. And the fact that they didn't and the fact that differences exist resulting from lapse[s] in time, and differences in perspective, and differences in training indicates that, in fact, everybody is telling the truth about their honest recollection about what happened." Fiallo-Lopez, 78 Wn. App. at 729-30 (emphasis omitted) (second alteration in original). This comment was held to not constitute misconduct because the prosecutor was arguing "that the facts indicated the officers were truthful." Id. at 730.

[60] RP (Jan. 24, 2011) at 100.

[61] 164 Wn. App. 327, 341 n.4, 263 P.3d 1268 (2011) (alteration in original).

[62] See also Fiallo-Lopez, 78 Wn. App. at 730-31 (a prosecutor may comment on witness veracity if he or she does not express a personal opinion and does not make the comment to incite the passion of the jury). King relies on the Ninth Circuit's decision in United States v. Witherspoon, 410 F.3d 1142 (9th Cir. 2005), where the prosecutor stated, "[T]hey [the police officers] took the stand and they told you the truth. . . . And, on top of that if they come in here and lie, I guess they're riskin' bein' prosecuted for perjury. Doesn't make sense because they came in here and told you the truth, ladies and gentlemen." Id. at 1146. The court held the comment constituted prosecutorial vouching. Id. Unlike the comment in King's case, however, the prosecutor discussed the perjury in the context of personal assurances of the witnesses' veracity.

C. Prosecutor's Assertion that Defense Counsel Misrepresented Facts

A prosecutor may not disparage defense counsel or otherwise impugn defense counsel's integrity.[63] A prosecutor may, however, argue the evidence does not support the defendant's theory of the case.[64] A prosecutor's remarks, even if improper, are not grounds for reversal if defense counsel invited or provoked them.[65]

The context of the closing argument and rebuttal reflect the prosecutor's intention to argue the evidence did not support King's theory of the case—namely, that Rosier told the police the gun was King's because Rosier knew it was a crime to possess the weapon. The State and defense counsel disagreed over whether it would be illegal for Rosier to have a gun in the car. To rebut King's defense that Rosier knew it was a crime to possess the weapon, the State presented testimony that a person may carry an unloaded gun in a car without a concealed weapons permit.

The prosecutor here objected to defense counsel's statement during closing that "I could not help but think that it's very possible that someone other than Mr. King and someone other than Mr. Walker could be sitting at this table facing charges. The charges would be assault in the second degree."[66] The court sustained the objection, at which point the prosecutor turned to defense counsel and stated, "You misrepresented the testimony."[67] In rebuttal, the prosecutor stated King's defense was "based on extreme misrepresentation. I could be here all night going in and picking out all of the

---

[63] State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011).

[64] State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).

[65] Id.

[66] RP (Jan. 24, 2011) at 133.

[67] Id. at 134.

15

misrepresentations that were made."[68] The prosecutor later stated, "It's not a crime for Mr. Rosier to have a gun in the car."[69] King objected. King now argues these comments by the prosecutor disparaged his counsel.

Because the prosecutor's comments about misrepresenting the law were in response to King's argument that Rosier could be charged with unlawful possession of a firearm, the comments did not constitute reversible misconduct. None of the alleged improper comments constituted prosecutorial misconduct, and King was therefore not deprived of a fair trial.

*Sentencing Enhancement Unanimity Instruction*

King contends the court erred by failing to instruct the jury it had to return a unanimous decision on the firearm enhancements.[70]

We review alleged errors of law in jury instructions de novo.[71] Failure to timely object usually waives a claim of instructional error on appeal.[72] However, an appellant may raise an issue for the first time on appeal if the error is both manifest and constitutional.[73] To be "manifest," King must show that the asserted error had practical

---

[68] Id. at 154.

[69] Id. at 160.

[70] The State argued that King invited the error by virtue of the defense's proposed instructions. As King points out in his reply, codefendant Walker proposed the instructions, so King has not waived the argument on the basis of invited error.

[71] State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

[72] RAP 2.5(a); State v. Williams, 159 Wn. App. 298, 312-13, 244 P.3d 1018, review denied, 171 Wn.2d 1025 (2011).

[73] RAP 2.5(a)(3); State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

and identifiable consequences at trial.[74] King must therefore identify an error of constitutional magnitude and show how the alleged error actually affected his rights at trial.

The failure to instruct the jury on unanimity is an error of constitutional magnitude. The jury must unanimously find beyond a reasonable doubt any aggravating circumstance that increases the penalty for a crime.[75] The error is also manifest because the jury did not know whether it was to conduct the same deliberative process for the sentence enhancements as is conducted for the substantive crimes.

Because the error is both constitutional and manifest, the burden shifts to the State to demonstrate the error was harmless beyond a reasonable doubt.[76] The "test for determining whether a constitutional error is harmless [is] 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"[77]

The State contends the error did not contribute to the verdict because the jury necessarily found beyond a reasonable doubt that King assaulted Rosier and Johnson with the gun, and that King possessed the gun at the same time as the assault. The State also suggests that the unanimity portions in the opening and closing instructions are broad

---

[74] State v. Gordon, 172 Wn.2d 671, 676, 260 P.3d 884 (2011).

[75] State v. Nuñez, 174 Wn.2d 707, 712, 285 P.3d 21 (2012) (citing Blakely v. Washington, 542 U.S. 296, 313-14, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

[76] Gordon, 172 Wn.2d at 676. It would be a structural error if the trial judge rather than the jury made the determination whether the enhancement applied. State v. Recuenco, 163 Wn.2d 428, 442, 180 P.3d 1276 (2008) ("[I]t can never be harmless to sentence someone for a crime not charged, not sought at trial, and not found by a jury. In this situation, harmless error analysis does not apply."). Here, the enhancement was included in the Information, sought at trial, and found by a jury, but without a proper unanimity instruction. The constitutional harmless error standard applies.

[77] State v. Brown, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (internal quotation marks omitted) (quoting Neder v. United States, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

enough to extend to the sentencing enhancement special verdict forms.[78] But the State

offers no authority on point. The State's analysis also misses the mark.

Unanimity is a critical concern.[79] The general instructions on unanimity required to

enter the verdicts do not on their face extend to the special verdict forms. Given different

instructions, juries return different verdicts.[80] A "flawed deliberative process tells us little

about what result the jury would have reached had it been given a correct instruction."[81]

Where an instructional error implicates unanimity, we must not substitute our judgment for

the judgment of the jurors:

> For instance, when unanimity is required, jurors with reservations might not
> hold to their positions or may not raise additional questions that would lead to
> a different result. We cannot say with any confidence what might have
> occurred had the jury been properly instructed. We therefore cannot
> conclude beyond a reasonable doubt that the jury instruction error was
> harmless.[82]

Because we cannot divine whether the jury would have imposed all four firearm

enhancements on King given proper instruction, we cannot conclude the error was

---

[78] Jury instruction 2 read, "As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict." Clerk's Papers at 91. With respect to each charged crime and each lesser included offense, the closing instruction (jury instruction 48) read, "If you unanimously agree on a verdict, you must fill in the blank provided in verdict form [A or A(1)]." Clerk's Papers at 138. The closing instruction also stated, "[E]ach of you must agree for you to return a verdict." Clerk's Papers at 144.

[79] Although our Supreme Court has overruled the nonunanimity rule announced in Goldberg and Bashaw, those decisions provide a helpful discussion of the fundamental importance of jury unanimity in the deliberative process. State v. Goldberg, 149 Wn.2d 888, 72 P.3d 1083 (2003), overruled on other grounds by Nuñez, 174 Wn.2d at 718-19; State v. Bashaw, 169 Wn.2d 133, 234 P.3d 195 (2010), overruled on other grounds by Nuñez, 174 Wn.2d at 718-19.

[80] See, e.g., Goldberg, 149 Wn.2d at 891-93.

[81] Bashaw, 169 Wn.2d at 147.

[82] Id. at 147-48.

harmless.[83] We therefore vacate the sentence enhancements. If the State wishes to impanel a jury to retry the enhancements, it may do so.[84]

*Statement of Additional Grounds*

King filed a statement of additional grounds arguing the court erred in calculating his offender score and challenging the sufficiency of the evidence of his conviction for unlawful possession of a firearm, and asserting speedy trial and Brady[85] violations. We find no merit in his arguments.

The court properly included his prior convictions for unlawful possession of a firearm and two prior convictions for controlled substance violations. The court correctly determined that counts 1 and 3 pertaining to Rosier do not constitute the same criminal conduct as counts 2 and 4 pertaining to Johnson because they did not involve the same victim.[86]

With respect to the sufficiency of the evidence on his conviction for unlawful possession of a firearm, the State presented sufficient evidence of King's dominion and control over the gun itself, regardless of how the gun ended up in Rosier's car.[87]

No speedy trial violation is apparent from the record before us. While King's trial date was continued multiple times, the court explained the grounds for continuances in its

---

[83] This jury was confused about the unanimity requirement in general. The jury asked whether it needed to be unanimous to decide one of the charged crimes, unlawful possession of a firearm. See Clerk's Papers at 82.

[84] Nuñez, 174 Wn.2d at 717 (except in the death penalty context, double jeopardy does not preclude a retrial of sentence enhancements).

[85] Brady v. Maryland, 373 U.S. 83, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[86] RCW 9.94A.589(1)(a).

[87] The State presented testimony that King dropped the gun onto Rosier's lap and told Rosier not to say anything about the gun, after having used the gun to threaten Rosier and Johnson.

order on the defendant's motion to dismiss under CrR 8.3. While King himself did not agree to all the continuances, the court determined the continuances were "required in the administration of justice."[88] Nor has King shown how he was substantially prejudiced in the presentation of his defense.[89] This record does not support a speedy trial violation.

Finally, with respect to the alleged <u>Brady</u> violation, defense counsel raised this issue in a CrR 8.3 motion. The court denied the motion, finding King had not shown actual prejudice affecting his right to a fair trial, even though the State substantially delayed giving defense counsel the transcript of the interview. King does not establish any reversible error regarding the alleged <u>Brady</u> violation.

We affirm King's convictions for second degree assault and felony harassment. We vacate the firearm enhancements and remand for further proceedings consistent with this opinion.[90]

WE CONCUR:

---

[88] CrR 3.3(f)(2).

[89] <u>Id.</u>

[90] The court's ruling on this matter necessarily renders moot the appellant's January 28, 2013 motion to file a supplemental brief on the sentencing enhancements.